# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK E. BROWN,

*Plaintiff,*

vs.

Case No. 16-1314-EFM

SOUTH CENTRAL KANSAS
EDUCATION SERVICE CENTER,
DISTRICT # 628, d/b/a NEW DIRECTIONS
LEARNING ACADEMY,

*Defendant.*

## ORDER

This case arises out of the non-renewal of Plaintiff Mark E. Brown's teaching contract with Defendant South Central Kansas Education Service Center, District # 628, doing business as New Directions Learning Academy, and Defendant's failure to hire Plaintiff when a teaching position became available shortly after he received his notice of non-renewal. Plaintiff alleges that Defendant failed to hire him on the basis of his race in violation of federal and state anti-discrimination laws.[1] This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 25). For the reasons explained below, the Court grants Defendant's motion.

---

[1] Plaintiff also brought claims alleging discrimination and retaliation in relation to his Spring 2015 evaluation and subsequent grievance, and a retaliation claim based on Defendant's failure to hire him in June 2015. Plaintiff concedes that these claims cannot survive summary judgment. Doc. 36, p. 15. Accordingly, the Court will address

# I.     Factual and Procedural Background[2]

Defendant's mission includes helping school districts to educate students in the most effective and efficient manner.  It serves approximately 27 Kansas school districts, and provides various services, including adult education services.  Defendant provides adult education services in Topeka, Kansas, under the name New Directions Learning Academy ("New Directions").  New Directions helps adults obtain high school diplomas by assisting students with their questions—it does not offer teacher-led classes, but rather, students make their own lesson plans.

In 2012, New Directions provided services at four Topeka locations—Fairlawn Plaza, Oakland Community Center, Shawnee County Jail, and Shawnee County Jail Annex.  In the spring of 2012, Plaintiff applied for a part-time teaching position at the Jail Annex.  After interviewing with Susan Lindstrom, program coordinator for New Directions, Plaintiff received and accepted an offer for the position.  Defendant's Executive Director, Dr. Bradley Mark Pepper, did not participate in the decision to hire Plaintiff.  In March 2014, Plaintiff's security clearance to work at the Jail Annex was terminated—a decision Defendant had no involvement in making.  Rather than terminate Plaintiff's employment, Lindstrom and Dr. Pepper created a position for Plaintiff at the Fairlawn location.

In March 2015, in response to changes in Kansas law affecting Defendant's funding, Dr. Pepper determined that Defendant needed to cut 50% or more from its budget.  As a result, Defendant implemented a reduction in force ("RIF") that reduced Defendant's total staff by

---

Plaintiff's only remaining claim—that Defendant unlawfully discriminated against him when it failed to hire him in June 2015.

[2] The Court sets forth the uncontroverted facts in the light most favorable to the non-moving party.

approximately 32%.  At the time of the RIF, the Fairlawn location employed three full-time teachers, two part-time teachers, two counselors, and one teaching assistant.  All of the teachers held at least one certification.  Of the three full-time teachers, one held a certification in math, one held a certification in social studies, and one held a certification in English.  Plaintiff held certifications in physical education, health, special education, and psychology, and the other part-time teacher held certifications in math and science.  As part of the RIF, Defendant elected not to renew the teaching contracts of two Fairlawn employees—Plaintiff and the teaching assistant.  Plaintiff received his notice of non-renewal on or about May 7, 2015.

After Defendant completed the RIF process, and after Plaintiff had been issued his notice of non-renewal, the full-time teacher holding a certification in social studies resigned.  Lindstrom submitted an internal New Hire Request Form to fill the vacancy.  The form included, among other things, separate sections for the person completing the form to indicate the "qualifications" and "requirements" for the position.   The qualifications box includes the following notation: "Secondary Certification in preferably Social Studies, Science, . . ." and the requirements box states "9-12 Kansas license current, . . ."  Plaintiff attached to his Response a purported advertisement for the position placed in the Topeka Capital Journal Newspaper, titled "Secondary Certified Teacher New Direction Learning Academy."  The advertisement does not appear to identify any "qualifications" or "requirements" for the position, does not include a job description, and does not state any certification preferences for the position.

Defendant's employee handbook addresses the rehiring of an employee affected by a RIF.  It states, in relevant part:

> Any certified/licensed employee who has not been re-employed as a result of reduction of the teaching staff shall be considered for re-employment if a vacancy exists for which the certified/licensed employee would be qualified.

> The Executive Director will recommend to the Board reinstatement of any such certified/licensed person whom he/she deems qualified and able to serve the best interests of the Service Center. The Board shall not be required to consider reinstatement of any such person after a period of one year from the date of non-renewal.

In seeking to fill the vacancy, Lindstrom was particularly interested in hiring a teacher certified in social studies. The teacher that created the vacancy held a social studies certification and Lindstrum believes it is important to have teachers certified in the main core areas of math, social studies, and English. Lindstrom received four applications for the position, including one from Plaintiff. Although Plaintiff held other certifications and met the minimum requirements to work as a teacher at New Directions, he did not have a certification in science or social studies. Lindstrom did not consider Plaintiff qualified for the vacancy, and Defendant did not consider Plaintiff for the position because he did not have a social studies certification. The applicant hired to fill the position held a certification in social studies.

Plaintiff is African American and argues that Defendant discriminated against him on the basis of his race when it failed to hire him to fill a teaching vacancy in June 2015, and instead filled the position with a Caucasian applicant, in violation of Title VII, 42 U.S.C. § 1981, and the Kansas Act Against Discrimination ("KAAD"). While Plaintiff's Complaint alleged several violations of federal and state law, Plaintiff agrees that the only "remaining issue is whether or not he was discriminated against because of his race in relation to the failure to hire him for the vacancy created at the end of the school year by the resignation of an employee retained under the RIF."

## II.    Legal Standard

Summary judgment is proper if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[5]  If the movant carries its initial burden, the nonmovant may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[6]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7]  The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[8]

---

[3] Fed. R. Civ. P. 56(a).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted).

[6] *Id.* (citing Fed. R. Civ. P. 56(e)).

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III.    Analysis[9]

A plaintiff may demonstrate intentional discrimination either through direct or indirect evidence.[10]  The Court applies the familiar *McDonnell Douglas* burden-shifting framework where, as here, the plaintiff seeks to prove discrimination with indirect evidence.[11]  Under this framework, Plaintiff must first establish a prima facie case of discrimination—his burden at this stage is not onerous.[12]  In a failure to hire case, this requires that Plaintiff show: (1) he belongs to a protected class, (2) he applied for and was qualified for the position in question, and (3) he "was rejected under circumstances which give rise to an inference of unlawful discrimination."[13]  Once Plaintiff establishes his prima facie case, the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[14]  Defendant's burden at this stage "is 'exceedingly light,' " and Defendant's "stated reasons need only be legitimate and non-discriminatory 'on their face.' "[15]  Once Defendant meets its burden to articulate a legitimate,

---

[9] The Court's analysis applies to Plaintiff's claims under Title VII, 42 U.S.C. § 1981, and the KAAD as each claim relies on the same allegations and is governed by the same legal standard.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997) (noting that the same standard applies to Title VII, § 1981, and KAAD discrimination claims).

[10] *DePaula v. Easter Seals El Mirado*, 859 F.3d 957, 969 (10th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[11] *Id.* at 969.  Under this three-part framework, "the burden of production shifts from the plaintiff to the defendant and back to the plaintiff," while the "ultimate burden of persuasion" to show discrimination remains on Plaintiff.  *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 256 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

[12] *Id.*; *Burdine*, 450 U.S. at 252

[13] *Burdine*, 450 U.S. at 252-53.

[14] *DePaula*, 859 F.3d at 970 (citation omitted).

[15] *Id.* (quoting *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 889-900 (10th Cir. 2017); *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1042 (10th Cir. 2011)).

nondiscriminatory reason for its hiring decision, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered justification is pretext.[16]

**A.     Plaintiff has established a prima facie case of discrimination.**

Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because he was not qualified for the full-time teaching position and no evidence supports an inference that Defendant's decision not to hire Plaintiff resulted from unlawful discrimination. As noted above, Plaintiff does not face an onerous burden at this stage, and the Court concludes that Plaintiff has met his burden. First, the parties do not dispute that Plaintiff belongs to a protected class. Second, although the "qualifications" identified by Lindstrom include a secondary certification, "preferably" in social studies or science, Plaintiff has presented evidence suggesting that he met the listed "requirements" to fill the position.[17] Further, the notation that a social studies or science certification was "preferred" suggests that a candidate may be qualified for the position without having a preferred certification. Plaintiff has presented sufficient facts at this stage to allow an inference that he met the minimum qualifications for the position. Finally, that Defendant did "not eliminate the position for which the candidate was rejected," and instead hired a Caucasian

---

[16] *Id.*

[17] Defendant's internal hiring form included separate areas to indicate the qualifications and requirements for the position. While the parties dispute whether Plaintiff satisfied the qualifications, Defendant appears to concede that Plaintiff met the listed requirements for the position.

applicant to fill the position satisfies the third requirement in Plaintiff's prima facie case—that he "was rejected under circumstances which give rise to an inference of unlawful discrimination."[18]

## B.     Defendant has proffered a legitimate, nondiscriminatory reason for rejecting Plaintiff's application.

Defendant states that it did not hire Plaintiff because it needed to replace a teacher that held a social studies certification and Plaintiff did not possess a social studies or science certification, the certifications preferred by Defendant.  In explaining its desire to hire a teacher with a social studies certification, Defendant posits that it is important to have teachers certified in the main core areas of math, social studies, and English.[19]  Ultimately, Defendant rejected Plaintiff's application in favor of a candidate holding a social studies certification.  Defendant has satisfied its light burden to articulate a legitimate, nondiscriminatory reason for not hiring Plaintiff, and the burden shifts back to Plaintiff to demonstrate that Defendant's proffered justification is pretextual.

## C.     Plaintiff cannot show pretext.

Plaintiff may show pretext by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" such "that a reasonable factfinder could rationally find them unworthy of credence and

---

[18] *Burdine*, 450 U.S. at 252-53; *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999) (noting that [a]n inference of discrimination is raised when an employer rejects an otherwise qualified minority employment candidate and thereafter does not eliminate the position for which the candidate was rejected).  *See also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (recognizing that prima facie case is satisfied if all other elements are met and after a plaintiff's rejection, the position remains open and the employer continues to seek applicants from persons with the plaintiff's qualifications).

[19] Plaintiff's attempt to controvert this fact fails as he merely states that "someone certified in all of the main core areas would be more valued and able to meet all students needs."  First, this does not controvert Defendant's statement that it is important to employ teachers certified in the main core areas.  Second, even if having one teacher certified in all of these areas provides more value, this is irrelevant as Plaintiff has not alleged that he held certifications in each of the main core areas.  Third, Plaintiff's arguments based on his own value assessments invite the Court to second-guess Defendant's value determinations—a request the Court will not indulge.  *See Santana v. City & Cty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (quotation omitted)) (acknowledging that it is not the Court's role to "act as a super personnel department that second guesses employer's business judgments").

hence infer that the employer did not act for the asserted non-discriminatory reasons."[20] When analyzing pretext, Courts "examine the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation."[21] Courts will not question the wisdom, fairness, or correctness of an employer's proffered reasons; rather, the "relevant inquiry is . . . whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs."[22] "[M]ere conjecture that an employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."[23]

Evidence of pretext "may take a variety of forms,"[24] but typically a plaintiff will demonstrate pretext in one of three ways:

> (1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.[25]

The Tenth Circuit has warned courts to " 'proceed with caution when considering the relative merits of individual employees' or candidates for employment."[26] A plaintiff arguing "that an employer's claim that it hired someone else because of superior qualifications is pretext for

---

[20] *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quotations omitted).

[21] *Id.* (quotation and alteration omitted).

[22] *Id.* (quotation omitted).

[23] *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1270 (10th Cir. 2012) (quotation omitted).

[24] *Ramsey v. Labette Cty. Med. Ctr.*, 297 F. App'x 730, 734 (10th Cir. 2008) (quotation omitted).

[25] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[26] *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 602 (10th Cir. 2014) (quoting *Jaramillo*, 427 F.3d at 1308).

discrimination . . . must come forward with facts showing an 'overwhelming' 'disparity in qualifications.' "[27]

Plaintiff's primary argument in favor of pretext appears to be that Defendant's failure to consider him for and offer him the vacant position violated Defendant's written policy, holding a certification in social studies or science was not a true qualification for the vacant position, and Plaintiff was in fact qualified for the position. Even if Plaintiff held the minimum requirements to fill the vacant position, however, he did not hold the preferred qualifications, as did the candidate selected to fill the vacancy. Plaintiff has identified no evidence in the record that could support a finding that Defendant's proffered reason for not hiring Plaintiff—that he did not hold a certification desired by Defendant—constitutes pretext. Plaintiff's arguments to the contrary rely on speculation and conjecture.

1.    *Written policy regarding rehiring after a RIF*

The Court disagrees that Defendant's alleged failure to follow its written policy regarding the rehiring of employees terminated as part of a RIF demonstrates pretext. While a failure to follow company policy can be evidence of pretext, it does not follow that *every* failure to follow a company policy satisfies a plaintiff's burden to establish pretext. Indeed, the Tenth Circuit recognizes that "the mere fact that an employer failed to follow its own internal procedures does

---

[27] *Id.* (quoting *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010)).

not necessarily suggest that the substantive reasons given by the employer for its employment decision were pretextual."[28]

Here, the written policy Defendant allegedly violated states, in relevant part, that any employee terminated in a RIF "shall be considered for re-employment if a vacancy exists for which [he] *would be qualified*," and that the "Executive Director will recommend to the Board reinstatement of any such . . . *person whom he/she deems qualified and able to serve the best interests of the Service Center*."[29]  It is undisputed that Defendant did not consider Plaintiff qualified for the vacant position—whether correct in that determination or not.  Plaintiff admits that (1) both Lindstrom and Dr. Pepper "assumed" Plaintiff was not qualified for the position and (2) Defendant did not consider Plaintiff as "qualified" for the position because he did not hold a certification in either social studies or science.  Accordingly, any failure to follow policy stems from a belief regarding Plaintiff's qualifications.  Nothing in the record supports an inference that Defendant did not honestly believe that Plaintiff lacked qualifications for the position or that Defendant did not act in good faith on its belief.  The Tenth Circuit has recognized that if a decision maker did not believe that a policy existed, a "mistake in failing to follow [that policy] does not show pretext."[30]  Likewise, where a decision maker did not believe that a policy applied, a mistake in failing to follow that policy does not show pretext.  In sum, Plaintiff has failed to meet his

---

[28] *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 695 (10th Cir. 2008) (quoting *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007)).

[29] Defendant alternatively argues that even if it the policy did apply, it did not violate the policy because hiring Plaintiff would not have served "the best interests of the Center."  Defendant has proffered that it is important to have teachers certified in certain core subjects and it is not the Court's role to disregard that business judgment in the absence of pretext.

[30] *Cooper*, 296 F. App'x at 695 (quoting *Berry*, 490 F.3d at 1222).

burden to demonstrate pretext based on Defendant's alleged failure to follow its RIF re-hire policy because the uncontested facts show that Defendant did not believe Plaintiff held the requisite qualifications to fill the vacant position such that it should have proceeded under the policy.

    2.  *Qualifications to perform the vacant position*

    Plaintiff's argument regarding qualifications for the vacant position appears twofold—first, Plaintiff argues that a social studies certification is not a qualification for the position, and second, Plaintiff argues that he held the requisite skills for the position.

    First, Plaintiff points to evidence that the only *requirement* to teach at New Directions was that the teacher must be a licensed, certified teacher—Defendant does not dispute this. Plaintiff, however, does not contest that Lindstrom was in fact seeking a candidate with a social studies certification or that Defendant did not consider Plaintiff qualified for the position due to his lack of a social studies certification. Thus, while the teacher filling the vacancy may not have been required to hold a specific certification to be employed by New Directions, it is uncontroverted that Defendant did not consider Plaintiff qualified because it was seeking a candidate with a social studies certification and Plaintiff did not hold that certification. Plaintiff has simply failed to set forth any evidence to suggest that Defendant's value determination regarding teaching certificates is unworthy of belief. Defendant produced evidence explaining that when making hiring decisions it seeks to ensure that it has teachers in certain core subjects on staff, and Plaintiff has produced no evidence to refute this explanation. Likewise, Plaintiff has not shown that Defendant considered other applicants for the position that did not hold the identified certifications. Whether the certification in question actually constituted a requirement or qualification for the position does

not matter where, as here, it is uncontested that Defendant, acting in good faith, treated it as a true requirement or qualification.

Second, Plaintiff argues that he held the skills required of someone with a social studies certification, and that his special education certification is equivalent to or preferable over a social studies certification. Plaintiff's self-valuation of his special education certification lacks evidentiary support and does not demonstrate that Defendant's stated reason for not hiring Plaintiff constitutes pretext.[31] Plaintiff represents that as a special education teacher he must be able to assist students with all subjects, including all core subjects, and thus, argues that he held the necessary qualifications to teach social studies. He has failed, however, to present any evidence that the requirements to obtain a special education certification include the same requirements to obtain a social studies or science certification for teaching students outside of the special education context. Nor has he identified any evidence that holding a special education certification is equivalent to holding certifications in each of the core subjects. Plaintiff merely speculates that his certification offers the same value as a teacher certified in a core subject—this unsupported speculation does not establish pretext.[32] Likewise, Plaintiff's self-valuation of his skills does not rise above mere conjecture that Defendant's stated reason for not hiring him constitutes pretext. Defendant sought a teacher with one of two specific certifications, neither of which Plaintiff held.

---

[31] *See, e.g.*, *Hollis v. Aerotek, Inc.*, 2015 WL 8375117, at *2 (D. Kan. 2015) (citing *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)) ("A plaintiff's opinion that an interviewer was wrong in his assessment of the plaintiff's qualifications does not demonstrate pretext.").

[32] Plaintiff also argues that Defendant should have interviewed him and allowed him to demonstrate that he held the requisite skills desired for the position. It is not this Court's role to act as a super personnel department or second-guess Defendant's business decisions. Accordingly, absent circumstances not present here—for example, if Defendant had interviewed other candidates also lacking the preferred certifications—the Court will not require Defendant to grant Plaintiff an interview when it believes that Plaintiff lacks the requisite qualifications.

Plaintiff's self-serving and conclusory statements to the contrary do not satisfy his burden to establish pretext.

### 3.       *Past treatment of Plaintiff*

Defendant argues that the record lacks any evidence suggesting Plaintiff's race played any role in its employment decisions, and cites its prior interactions with Plaintiff to argue against an inference of discrimination.  The U.S. Supreme Court recognizes that in failure-to-hire cases involving a former employee, "facts as to the [company's] treatment of [the employee] during his prior term of employment" may be relevant to the pretext inquiry.[33]  Although not necessary to the Court's decision, the Court notes that the record concerning Plaintiff's prior employment with Defendant further confirms the lack of evidence of intentional discrimination in this case.  For example, when the Shawnee County Department of Corrections revoked Plaintiff's security clearance in 2014, instead of terminating Plaintiff's employment, Defendant created a new position for Plaintiff at its Fairlawn location.  Likewise, Plaintiff has previously represented that Lindstrom had always treated him fairly.

Plaintiff has failed to carry his burden to show that Defendant's proffered justifications for its employment decision are pretext, and his claims cannot survive summary judgment.

## IV.   Conclusion

Defendant has proffered legitimate, nondiscriminatory reasons for its decision not to hire Plaintiff to fill a vacancy created in June 2015, and Plaintiff has failed to meet his burden to demonstrate that Defendant's justifications constitute pretext.  There exists no genuine issue of

---

[33] *McDonnell Douglas*, 411 U.S. at 804.

material fact precluding summary judgment in Defendant's favor.  Accordingly, the Court grants

Defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc.

25) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 25th day of April, 2018.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE